**In re Meilech BLUMENBERG, Debtor.**

**Meilech Blumenberg, Plaintiff,**

v.

**Akran Yihye, Defendant.**

**Bankruptcy No. 899–89533–288.
Adversary Nos. 899–8505–288, 800–8385–288, 800–8054–288.**

United States Bankruptcy Court,
E.D. New York.

July 6, 2001.

David Gray Carlson, New York City, Counsel for the Plaintiff.

A. Scott Mandelup, Pryor & Mandelup, LLP, Westbury, NY, Counsel for the Trustee.

Alfred F. Dimino, Senior Trial Attorney, Central Islip, NY, Office of the United States Trustee.

## CORRECTED MEMORANDUM RE: DISMISSING CASE AS A BAD FAITH FILING UNDER 11 U.S.C. § 707(a)

STAN BERNSTEIN, Judge.

### Background

A. *Prior Proceedings*

On July 9, 1997, the High Court of Justice, Queen's Bench Division, in London entered a judgment (English judgment) on a breach of contract action against the debtor (Blumenberg or debtor) in favor of Akran Yihye (Yihye or judgment creditor) in the amount of £76,028. On January 15, 1998, Blumenberg was adjudged a bankrupt in England in a proceeding under the Insolvency Act of 1986 (English bankruptcy case). On April 5, 1999, the New York State Supreme Court entered a $122,298.88 judgment (New York judgment) in favor of Yihye in recognition of

the English judgment. Leave to appeal the judgment was later denied by the New York State Court of Appeals. He then filed for chapter 11 relief with this Court on October 13, 1999. The debtor's chapter 11 case was converted to one[1] under chapter 7 by the Court *sua sponte* on December 28, 1999, and Robert L. Pryor, Esq. (trustee), was appointed as the chapter 7 trustee of the debtor's estate.

B. *The adversary proceedings and motion practice*

In the course of this bankruptcy case, three separate adversary proceedings have been filed. The first, (Adv.Proc. No. 99–8505) (Debtor's First AP), was filed on November 3, 1999, by the debtor shortly after filing for chapter 11 relief; the second, (Adv.Proc. No. 00–8385) (Trustee's AP), was filed by the trustee on October 6, 2000, following *sua sponte* conversion of the debtor's chapter 11 case to a chapter 7 case on December 28, 1999; and the most recent adversary proceeding, (Adv.Proc. No. 01–8054) (Debtor's Second AP), was filed on January 26, 2001, by the debtor after receiving an order of discharge in his English bankruptcy case on January 15, 2001.

1. *The Debtor's First AP*

In the Debtor's First AP, he sought five forms of alternate relief including:

a) a declaratory judgment that the New York judgment was stayed by the automatic stay in the English bankruptcy case and would become unenforceable upon the debtor's discharge in that case on January 15, 2001;

---

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the General Reference to the Court under Rule 4 of the General Rules of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2). This Memorandum and Order constitutes Findings of Fact and Conclusions of Law under Fed.R.Civ.P. 52 as made applicable by Fed. R. Bankr.P. 7052.

b) a declaratory judgment that Yihye's proof of claim, filed with this Court, be disallowed under Fed. R. Bankr.P. 3007;

c) a declaratory judgment that Yihye's proof of claim be equitably subordinated in the sense of being disallowed altogether;

d) dismissal of the chapter 11 case; or

e) in the alternative, a declaratory judgment that Yihye's recovery be limited to prepetition assets only and that such assets be remitted to the official receiver in the English bankruptcy case.

On November 15, 1999, the debtor filed a motion for summary judgment in his First AP. On December 28, 1999, the Court converted the debtor's chapter 11 case *sua sponte* to a case under chapter 7 without having decided the pending motion in the Debtor's First AP.

In its Memorandum of Decision converting the debtor's chapter 11 case to a case under chapter 7, the Court noted a number of admissions by the debtor that might be sufficient to justify immediate dismissal of the case as a bad faith filing. These included admissions by the debtor that he had filed for chapter 11 relief "when [he] had no non-exempt assets to protect, when [he] had no intention to file a plan of reorganization, and when [his] express dual purpose was to attack a final state court judgment, which had been decided on the merits and not by a default judgment, by means of a collateral adversary proceeding". Memorandum at 15–16.

The United States trustee (UST) argued in support of dismissing this case on grounds of a bad faith filing, and further argued against conversion of the case to one under chapter 7. The UST pointed to the potential for substantial hardship imposed upon any panel trustee assigned to the administration of this no-asset case. *Id.* at 16. Nevertheless, this Court held that conversion rather than immediate dis-

missal was the appropriate remedy pending a full investigation by the trustee into the potential recovery of any alleged fraudulent transfers and a coordination of Yihye's claim with those of any other outstanding creditors of the debtor's English insolvency estate. By converting the case to one under chapter 7, a disinterested trustee would be provided with "an opportunity to investigate Yihye's allegations concerning fraudulent conveyances, to bring those actions if merited, recover damages or the specific assets, and to recommend to the Court and to the United States trustee an appropriate protocol for co-ordinating the administration of the debtor's cross-border insolvency estates and satisfying the limited number of claims." *Id.* at 19.

The trustee was further directed by this Court to make a determination whether there was any merit in the debtor's complaint. Based on the state Appellate Division's finding that the debtor's contention that the English bankruptcy case stayed or voided the state court judgment was meritless, the trustee determined that the Debtor's First AP was similarly without merit. On June 6, 2000, the trustee filed a proposed Stipulation and Order between the trustee, as successor to the chapter 11 debtor, and Yihye dismissing the Debtor's First AP, and sent a notice of his application for approval by the Court of the proposed stipulation to all parties in interest.

On June 19, 2000, the debtor filed an objection to the trustee's application and filed what he denominated a motion to intervene. The parties consented to having this contested matter determined on the motion papers.

### 2. *The Trustee's AP*

On July 19, 2000, the trustee filed a proposed Stipulation and Order between the trustee and Robert A. White, the Offi-

cial Receiver of the English bankruptcy case. The stipulation set forth the Receiver's agreement to disclaim any interest in any action or claim in this bankruptcy case provided that the Receiver was permitted to file a proof of claim in this case on behalf of the UK creditors, "subject to equalization" with respect to Yihye's claims. This Stipulation was approved by the Court after notice to all parties in interest, with no objection having been timely filed.

On October 6, 2000, the trustee filed his own adversary proceeding seeking to deny the debtor's discharge under sections 727(a)(3) and 727(a)(5) of the Bankruptcy Code because of the debtor's alleged destruction of documents, failure to keep or produce documents, and failure to explain satisfactorily the loss of assets.

### 3. *The Debtor's Second AP*

On January 26, 2001, the debtor filed his Second AP seeking a declaratory judgment under the Uniform Foreign Country Money–Judgments Recognition Act, NYC-PA section 5301, that this Court recognize and give effect to the order of discharge in the English bankruptcy case, which became final on January 15, 2001. On February 20, 2001, the debtor filed a motion to waive his right to a discharge under section 727(a)(10) of the Bankruptcy Code, conditioned on this Court's granting the relief sought in the Debtor's Second AP.[2]

### 4. *The trustee's motion to close the case and obtain judicial immunity*

On February 13, 2001, the trustee filed a motion (Trustee's Motion) seeking authorization under 11 U.S.C. section 105(a) to close the chapter 7 case and for an order granting "derived judicial immunity" to the

trustee and his law firm for any claims, causes of action, and proceedings arising from the trustee's business decision to close the case. The trustee seeks to close the case for the following reasons:

1) there is only one creditor in this case, Mr. Yihye[3];

2) there are little to no assets in this estate, and continued pursuit of the fraudulent conveyance claims will generate no funds for distribution to creditors;

3) the trustee has already incurred 116 hours of legal time having an imputed value of more than $29,000 pursuing fraudulent conveyance claims. These claims may ultimately be exceptionally difficult to prosecute successfully due to the cash nature of the diamond business conducted by the debtor's father; and

4) the debtor has a marked financial advantage over the trustee in having obtained *pro bono* counsel that has afforded the debtor an ongoing opportunity to litigate and relitigate issues without incurring attorney's fees.

On February 23, 2001, the debtor filed an opposition objecting to the trustee's motion to close the case.

### Discussion

The trustee has completed his investigation, and it is now incumbent upon this Court to determine whether to close this case and grant the debtor a chapter 7 discharge, or dismiss the case as a bad faith filing under 11 U.S.C. section 707(a) of the Bankruptcy Code.

A. *Burdensome administration/negligible asset recovery may justify abandonment.*

 The Court construes the trustee's motion for the authority to close the case

---

2. This Court takes issue with the propriety of the debtor's *conditional* motion. It presupposes "negotiating a deal" with the Court. That cannot happen.

3. This seems to ignore the reserved claim of the Receiver.

as predicated upon certain assumptions. In accordance with this Court's December 28, 1999, Memorandum and Decision, the trustee investigated potential fraudulent conveyance actions arising from a distribution of assets derived from the debtor's deceased father, allegedly distributed among the debtor and his brothers under a prepetition agreement in violation of New York's intestacy laws. Trustee's Mot. at 4, ¶ 8. However, the trustee has argued that due to the cash nature of the diamond business in which the debtor's brothers, but not the debtor, are engaged, the successful prosecution of alleged fraudulent conveyance actions as well as the collection of any judgment awarded might prove difficult. *Id.* at 4, ¶ 9.

■ It surely falls within the exercise of the trustee's combined business and legal judgment to abandon the Trustee's AP as an asset of the estate, if it is too burdensome to administer or will provide inconsequential value to the estate under section 554 of the Bankruptcy Code. *See In re Interpictures Inc.,* 217 F.3d 74 (2d Cir. 2000). That motion for abandonment is subject to prior notice and hearing. The trustee has satisfactorily explained to this Court why the probability of recovery of any fraudulent transfer, when multiplied by the net benefit to the estate after deducting the anticipated costs of litigation, justifies dismissing the Trustee's AP or, what is its functional equivalent, abandoning the claim. No party in interest, other than the debtor, has objected to the trustee's limited motion for the specific relief of abandonment or dismissal of the underlying alleged fraudulent transfer, nor to the complaint objecting to the debtor's discharge. Indeed, the Trustee's AP is based upon the destruction of documents which further hampers the trustee's ability to prosecute any fraudulent transfer actions. It makes no logical sense for the debtor to object to the trustee's abandonment of any potential fraudulent transfers in which the debtor himself is the alleged transferor, or to the dismissal of the trustee's complaint objecting to the debtor's discharge.

### B. *An adversary's zealous representation does not justify abandonment.*

■ The Court does not find the trustee's *pro bono* argument to be a valid and independent basis for authorizing the trustee to abandon or dismiss his own AP. The nub of this argument is that the trustee has incurred and anticipates continuing to incur substantial costs because the trustee is opposed by a zealous lawyer representing the debtor-defendant on a *pro bono* basis. If this argument were applied as a universal norm, then whenever a party in interest adverse to the trustee appears either *pro se* or is represented on a *pro bono* basis, that fact alone would be a sufficient ground to relieve the trustee from performing the duties of that office. Not only would such a holding subvert the very concept of *pro se* or *pro bono* representation, but it would ineluctably lead to the further argument that whenever a trustee is opposed by counsel with greater resources, that fact should also relieve the trustee from the duties of that office.

Moreover, there is another family of remedies for reimbursing the trustee and the estate for costs wrongfully imposed upon them by any alleged improper litigation tactics on the part of the debtor and/or his counsel. These remedies include sanctions against the debtor's counsel for filing any pleading in violation of the dictates of Bankruptcy Rule 9011 or the provisions of 28 U.S.C. section 1927 for vexatious and multiplicitous litigation. Indeed, that family of remedies cuts directly across abandoning meritorious claims or causes of action of the estate on the

grounds of the debtor's unjustified and sanctionable litigation tactics, whether by a counsel who is paid a very high hourly rate for his alleged obstructionist tactics, or one who does it on a *pro bono* basis. Notably, Rule 9011 sanctions are also cognizable in the context of bad faith bankruptcy filings. *See, e.g., In re Silberkraus*, 253 B.R. 890 (Bankr.C.D.Cal.2000) (imposing Rule 9011 sanctions against the debtor and his attorneys following conversion of chapter 11 petition to chapter 7 as a bad faith filing); *In re Collins*, 250 B.R. 645 (Bankr.N.D.Ill. 2000) (imposing Rule 9011 sanctions against the debtor and his attorneys following bad faith dismissal of the debtor's petition under section 707(a)). Nevertheless, the trustee's motion properly stands on the ground of abandonment under the provisions of section 544 as discussed above.

### C. *Prospective grants of judicial immunity for a bankruptcy trustee are disfavored.*

■ Next, this Court declines to enter an order granting blanket "derived judicial immunity" to a trustee from any acts or omissions in his or her administration of any chapter 7 case. There are circumstances in which it may be held that bankruptcy trustees "derive qualified judicial immunity for acts taken within their authority as an officer of the court", but this is an affirmative defense to a complaint that has been actually filed. *See In re Solar Financial Services, Inc.*, 255 B.R. 801, 803 (Bankr.S.D.Fla.2000) (citing *In re Clearwater Bay Marine Service*, 236 B.R. 285 (Bankr.M.D.Fla.1999)). In *Solar Financial Services*, the bankruptcy court found that a trustee's obtaining permission from the court to abandon records was in itself sufficient to qualify the trustee for judicial immunity, without any need to obtain an explicit grant of immunity prior to abandonment. The lack of necessity for

an "antecedent" grant of judicial immunity is even more compelling in this case, when no adverse claims have been raised against the trustee in any papers filed with this Court. Not a single case cited by the trustee has ever granted immunity in advance. If somebody sues the trustee in any other forum for acts or omissions, then the trustee can file a motion for an expedited hearing on the trustee's motion to reopen a closed case, remove that action to this Court, and then move to dismiss that action.

### D. *This case should be dismissed as a bad faith filing under section 707(a).*

In its December 28, 1999, Memorandum and Decision, this Court observed that the sole reason for converting the case rather than immediately dismissing it as a bad faith filing was to administer the estate for the limited purposes of preserving the debtor's non-exempt assets, if any, and recovering any alleged fraudulent transfers for the benefit of creditors. Since (i) the trustee has now decided that the costs outweigh the net benefits in pursuing any fraudulent transfers, (ii) the debtor has no non-exempt assets, and (iii) the Receiver has abandoned any interest in this case except for the right to file a proof of claim should a recovery be likely, there is no longer any persuasive reason why this case should not be closed or dismissed. Although the trustee has provided sufficient reason simply to close the case, given the circumstances surrounding the filing of the debtor's petition, this Court now inquires further whether this case should be dismissed as a bad faith filing under section 707(a). *See, e.g., Chambers v. NASCO, Inc.* 501 U.S. 32, 43–44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing an array of inherent judicial powers necessary to maintain courts' ability to manage their own affairs); *In re Khan*, 172 B.R. 613,

622 (Bankr.D.Minn.1994) (citing *Chambers* in support of its finding that courts may inquire into a debtor's motivation for filing as part of its inherent power "to regulate its own docket to ensure that its process is not being abused.").

### 1. Standard for dismissal under section 707(a)

█ It is well-settled law in this circuit that under section 1112(b) of the Bankruptcy Code, a bankruptcy court may *sua sponte* dismiss as a bad faith filing a chapter 11 petition filed solely to prosecute a collateral attack of a state court judgment, where the debtor has no realistic chance or intention of reorganizing. *See, e.g., In re C–TC 9th Avenue Partnership,* 113 F.3d 1304, 1309–10 (2d Cir.1997). But since Blumenberg's chapter 11 case was converted by this Court to a case under chapter 7 rather than dismissed outright under section 1112(b), section 707(a) provides the applicable standard for bad faith dismissals. Section 707(a) provides:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

In *In re Zick,* 931 F.2d 1124 (6th Cir. 1991), the debtor filed for chapter 7 relief shortly after his primary creditor received a $600,000 court-induced mediation award in a breach of contract action. Upholding the bankruptcy court's "for cause" dismissal of the debtor's chapter 7 case for a lack of good faith, the Sixth Circuit determined that the statute's use of the word "including" was not intended to limit the possible bases for dismissal solely to the three examples enumerated in section 707(a), and found that good faith in particular was an implied jurisdictional prerequisite "inherent in the purpose of bankruptcy relief". *Id.* at 1129 (citations omitted). While cautioning that dismissal based on a lack of good faith could only be determined on an *ad hoc* basis and in only the most egregious cases entailing concealment of assets, lavish lifestyles, and the intention to avoid singular debts incurred through fraud, misconduct or gross negligence, the Sixth Circuit affirmed the bankruptcy court's bad faith dismissal on the basis of the following factors:

(1) the debtor's manipulations which reduced the creditors in this case to one; (2) the debtor's failure to make significant lifestyle adjustments or efforts to repay; (3) the fact that the petition was filed clearly in response to [the largest single creditor]'s obtaining a mediation award; and (4) the unfairness of the debtor's use of Chapter 7 under the facts in this case.

*Id.* at 1128. The Third Circuit has recently followed *Zick* in finding that section 707(a) carries an implied good faith requirement under which courts may dismiss petitions as bad faith filings if the court determines that the petitioner has "abused the provisions, purpose, or spirit of bankruptcy law." *In re Tamecki,* 229 F.3d 205, 207 (3d Cir.2000) (citation omitted) (upholding dismissal of chapter 7 petition filed on the eve of divorce as a bad faith filing under section 707(a), where debtor knew he would soon be able to repay his debts

due to imminent dissolution of tenancy by the entirety in property).

In seeming contrast to the Sixth Circuit's approach in *Zick*, the Eighth Circuit has adopted a standard that requires all dismissals under section 707(a) to be justified under the "for cause" language explicitly set forth in the statute, assiduously avoiding the necessity of reading any implied "bad faith" requirement into section 707(a). *In re Huckfeldt*, 39 F.3d 829 (8th Cir.1994). While the *Huckfeldt* court agreed with the *Zick* court at the outset that the list of causes for bankruptcy dismissal enumerated under section 707(a) was nonexclusive, the Eighth Circuit nevertheless determined that the "bad faith" standard was too broad and that dismissal under section 707(a) is justified only when the debtor's filing departs from the "fundamental principles and purposes of Chapter 7". *Id.* at 832.

A careful reading of the decisions of the Sixth and Eighth Circuits shows that their respective "standards" are overlapping and perhaps indistinct. *See Huckfeldt*, 39 F.3d at 832 ("some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith"). The most substantive distinction between the positions is that the Eighth Circuit's *Huckfeldt* decision adopted the approach of the bankruptcy court in *In re Khan* in holding that the ability-to-pay factors listed as bad faith factors in *Zick* should be exclusively analyzed under section 707(b) rather than under section 707(a). *Id.* Even under this approach, however, the Eighth Circuit still found that the circumstances surrounding the filing of the debtor's chapter 7 petition in *Huckfeldt* justified affirming the bankruptcy court's dismissal of the debtor's petition "for cause" under section 707(a). Rejecting the debtor's argument that his

petition had been dismissed on the basis of his ability to pay, the Eighth Circuit asserted that the ability to pay is not a cause for dismissal under section 707(a) and observed that the debtor's petition was instead properly dismissed due to its having been filed for the purpose of thrusting the debtor's ex-wife into bankruptcy and frustrating a state court divorce decree. *Id.*

The Ninth Circuit has recently adopted the Eighth Circuit's position, holding that "bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)". *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir.2000). However, the *Padilla* court conveniently avoided the "for cause" inquiry in the case before it by applying a canon of statutory construction dictating that more specific statutes take precedence in application over general statutes; since the debts at issue in *Padilla* were consumer credit card debts, the divided Ninth Circuit panel concluded that the case should be decided under the section 707(b) "substantial abuse" standard of dismissal, which governs consumer debts.[4] The case before this Court is clearly distinguishable, since the debt at issue in this case is a judgment arising from a breach of contract action, rather than a consumer debt. Bad faith dismissal, then, is properly decided in this case under section 707(a), not section 707(b).

While the Second Circuit has not directly addressed the issue of a bad faith section 707(a) dismissal of a converted chapter 7 case, there is New York authority at both the district and bankruptcy court levels that adheres to the *Zick* line of reasoning. Shortly after the *Zick* decision, the district court for the Southern District of New York relied on that decision in affirm-

---

4. The *Khan* court used the same canon of construction to limit consideration of the abil-

ity-to-pay factors to dismissals under section 707(b).

ing a bankruptcy court's section 707(a) dismissal of a chapter 7 petition as a bad faith filing. *In re Werner,* 1992 WL 162637 (S.D.N.Y.) (affirming dismissal of petition filed by debtor shortly before post-judgment discovery and enforcement proceedings against him were to commence). More recently, the Bankruptcy Court for the Northern District of New York relied on *Zick* in finding that a debtor's lack of good faith is a valid "cause" for dismissal under section 707(a). *In re Griffieth,* 209 B.R. 823, 827 (Bankr.N.D.N.Y.1996) (dismissing as a bad faith filing debtors' chapter 7 petition filed primarily for the purpose of discharging their IRS debt).

> 2. *Dismissal of converted cases is permissible under the plain language of section 707(a).*

The fact that this case is being dismissed after conversion to chapter 7 poses a novel statutory question that must be addressed. Having found that dismissals for bad faith chapter 7 filings are justified under section 707(a), it is necessary to discuss why dismissal under section 707(a) is the appropriate disposition for this converted case, rather than dismissal under section 1112(b). Although the substantive ground for dismissal of Blumenberg's case is the bad faith filing of his chapter 11 petition, dismissal after conversion of the petition to one under chapter 7 is apparently barred by the plain language of section 1112(b). Section 1112(b) provides, in relevant part:

> (b) ... the court may convert a case under this chapter to a case under chapter 7 of this title *or* may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause...

11 U.S.C. § 1112(b). (Emphasis added). The plain language of the statute strongly suggests that the court must choose be-

tween converting the chapter 11 case to a case under chapter 7 or dismissing it based on the best interests of the creditors and the estate. Bad faith is one of the grounds for dismissal of a bankruptcy case in the Second Circuit. *See, e.g., C–TC 9th Avenue Partnership,* 113 F.3d 1304. However, once the case is converted to chapter 7, dismissal under section 1112(b) no longer applies, since 1112(b) only governs conversion or dismissal of petitions filed under chapter 11. Any subsequent dismissal of the converted case must necessarily be governed by section 707(a), which applies to chapter 7 cases. However, the applicable body of case law pertaining to chapter 7 bad faith dismissals appears only to reflect cases that were filed originally as chapter 7 cases, rather than cases that were dismissed under chapter 7 following conversion from chapter 11. This is not surprising, as chapter 11 cases filed in bad faith are usually dismissed immediately as bad faith filings under section 1112(b) or otherwise converted to chapter 7 cases which are administered by the trustee, who recovers and subsequently distributes assets of the estate for the benefit of the creditors.

In this case, despite evidence sufficient on its face to justify dismissal of Blumenberg's chapter 11 petition for bad faith filing, the Court determined that it was in the best interests of creditors and the estate to convert the case to chapter 7 in order for a trustee to administer the case and investigate the potential to recover assets for the estate. Under these circumstances, the Court explicitly held bad faith dismissal in abeyance pending a full investigation by the trustee. Having now found that the trustee has fully administered this case and determined that further attempts to recover assets would be unduly burdensome to the estate, the Court finds that it is now appropriate to proceed to dismiss this case as a bad faith filing. Although

the case can no longer be dismissed under section 1112(b) after having been converted under that section to a case under chapter 7, the plain language of section 707(a) clearly permits dismissal of any case under chapter 7, regardless of whether or not it was initially filed under chapter 7 or if it was originally filed as a chapter 11 case and subsequently converted to chapter 7. The only statutory prerequisite to dismissal under section 707(a) is that the case may be dismissed "only after notice and a hearing and only for cause". 11 U.S.C. § 707(a). Thus, this Court will continue to look to the circumstances surrounding the debtor's original chapter 11 filing to determine whether dismissal of the converted case is now appropriate under section 707(a).

3. *Blumenberg's actions justify both bad faith dismissal and "for cause" dismissal.*

▮▮▮ Whether or not the dismissal under section 707(a) is characterized as "for cause" or for "bad faith", it is clear that either standard requires an inquiry into the totality of the circumstances. *See Griffieth*, 209 B.R. at 826 ("Courts have developed multiple factors which are viewed together on an *ad hoc* basis as a totality of circumstances.") (citations omitted). After surveying the case law, the *Griffieth* court found the following facts to be relevant to a section 707(a) dismissal of a petition for lack of good faith:

(1) debtor's manipulations having the effect of frustrating one particular creditor, (2) absence of an attempt to pay creditors, (3) debtor's failure to make significant lifestyle changes, (4) debtor has sufficient resources to pay substantial portion of debts, (5) debtor inflates expenses to disguise financial well-being; and (6) debtor is overutilizing protec-

tions of the Code to the unconscionable detriment of creditors.

*Id.*

Even if this Court were to follow the more stringent *Huckfeldt* and *Khan* approach of eliminating the ability-to-pay factors from its analysis (factors (3), (4) and (5) of the *Griffieth* analysis), the facts surrounding Blumenberg's filing closely parallel the remaining *Griffieth* factors. Yihye is the only major creditor in this case. Having lost a breach of contract action before the English courts, Blumenberg litigated against the recognition of Yihye's foreign judgment in the New York state courts, losing at every level and ultimately being denied leave to appeal on the merits by the State Court of Appeals. However, before Yihye could enforce his judgment, Blumenberg filed a chapter 11 petition with this Court, further frustrating Yihye's efforts at collection and forcing him to litigate in this Court.

In the course of subsequent hearings, the debtor admitted not only to having no intention to reorganize, but also to filing a bankruptcy petition for the express purpose of bringing an adversary proceeding to attack the final state court judgment collaterally. A major factor in the decisions running through much of the case law justifying dismissals on the basis of bad faith is the fact that the debtor in each case filed a bankruptcy petition either to escape the consequences of a previous judgment or to avoid impending proceedings. This is precisely the behavior that Blumenberg engaged in here. Such conduct is clearly inconsistent with the Sixth Circuit's finding of an implied but inherent good faith requirement of those seeking bankruptcy relief. In fact, the debtor's attempt to avoid Yihye's enforcement of his recognized state court judgment also fails to satisfy even the "narrow, cautious approach to bad faith" set forth in *Khan*

and adopted by the Eighth Circuit in *Huckfeldt,* which urged:

> that bad faith under § 707(a) be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a "scorched earth" tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction.

*Id.* at 832 (citing *Khan* at 624–25). The debtor's actions in this case are precisely those cited by the Eighth Circuit as examples of the kind of extreme misconduct justifying "for cause" dismissal under section 707(a).

█ Finally, although the trustee has provided ample evidence to support his motion simply to close this case, it is appropriate for this Court to take the affirmative step of dismissing this case as a bad faith filing under section 707(a). Dismissal for bad faith filing serves an important role as a sanction against debtors and their counsel consistent with the purpose and spirit of the Bankruptcy Code aimed at providing a discharge only to the "honest but unfortunate" debtor. *See, e.g., Griffieth,* 209 B.R. at 830–31 ("While the 'fresh start' policy underlying Chapter 7 is well recognized, 'the Act limits the opportunity for a completely unencumbered new beginning' to the 'honest but *unfortunate* debtor.'") (citing *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)) (emphasis added). Furthermore, as the *Zick* court noted, good faith is a requirement that is "'inherent in the purposes of bankruptcy relief.'" *Zick,* 931 F.2d at 1129 (quoting *In re Jones,* 114 B.R. 917 (Bankr.N.D.Ohio 1990)).

█ Dismissing this case is an appropriate sanction against Blumenberg, who abused the bankruptcy process by admittedly seeking to invoke the jurisdiction of this Court primarily for the purpose of attacking Yihye's state court judgment. The imposition of the sanction of a dismissal in these circumstances is consistent with the logic of the statute and furthers the overriding statutory purpose of the Bankruptcy Code to restrict the "fresh start" only to "honest but unfortunate" debtors. *See United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.,* 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) ("Over and over we have stressed that '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'") (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850)). Neither is this bad faith dismissal merely a symbolic reprimand; as recent case law has shown, dismissals for bad faith filing can serve as substantive grounds on which to base sanctions under Federal Rule of Bankruptcy Procedure 9011 brought against the debtor and the debtor's counsel for abuse of the bankruptcy process. *See In re Silberkraus,* 253 B.R. 890; *In re Collins,* 250 B.R. 645.

> 4. *The debtor has already been afforded adequate opportunity to explain why his petition should not be dismissed.*

█ Section 707(a) provides that a debtor's bankruptcy case may be dismissed only "after notice and a hearing". 11 U.S.C. § 707(a). In *Zick,* the Sixth Circuit found that the bankruptcy court's failure to conduct a separate, "full-blown evidentiary hearing" on a motion for bad faith dismissal did not constitute a lack of notice and hearing under section 707(a), because the debtor's own prior admissions on the record and his opportunity and

subsequent failure to present evidence in opposition at an earlier dischargeability proceeding were sufficient to satisfy the notice and hearing requirement of section 707(a). *Zick,* 931 F.2d at 1128–29. Similarly in this case, the Court has already provided the debtor with ample opportunities through both extended oral argument and formal motion practice to explain why his bankruptcy case should not be dismissed. In hearings held before the conversion of the case to chapter 7, the debtor admitted that he had no intent to submit a plan of reorganization and that he had filed for the purpose of attacking the state court judgment, admissions sufficient on their face to warrant a bad faith dismissal under both section 1112(b) and section 707(a) of the Bankruptcy Code. Furthermore, in his objection to the trustee's motion for authority to close the case, the debtor's only argument in opposition relies solely on the contention that he has brought a valid claim for equitable subordination that must be heard in this Court. The complete lack of merit in this argument is addressed fully and at length in the next section of this opinion. Having found that the debtor has been provided with a full and fair opportunity to present his arguments why this case should not be dismissed, this Court concludes that the debtor's petition should be dismissed as a bad faith filing under section 707(a) without further notice or hearing.

E. *The debtor's equitable subordination claim is without merit.*

The debtor's objections to the closing of this case are based entirely on the argument that the dismissal of the chapter 7 case and the accompanying adversary proceeding will deprive the debtor of the "right" to try his equitable subordination claim, a right which is not cognizable outside of bankruptcy court. Debtor's Objection at 4–5, ¶ 12. The claim that the debt-

or seeks to subordinate, however, is that belonging to the judgment creditor Yihye, the predominant creditor in this case whose English judgment was recognized and given effect by the New York State Supreme Court on April 5, 1999. The only other creditors listed in the debtor's schedules are Providian Process Services and two credit card companies who are also creditors in the debtor's English bankruptcy case.

At the outset, the debtor lacks standing to bring an equitable subordination claim. And even if the debtor had standing, there are no cognizable grounds to assert such a claim under the facts of this case.

1. *The debtor lacks standing to bring an equitable subordination claim.*

a. *The debtor's standing argument lacks support in the applicable case law.*

██ The debtor's claim to have standing to bring an equitable subordination claim is not only disfavored by the case law, but fails to make sense in these circumstances. Although the debtor in his Memorandum in Support cites to numerous cases from the Fifth Circuit and the Southern District of New York in which courts have permitted standing to "parties other than the trustee", in none of the cited cases was standing extended to a debtor. Debtor's Mem. in Support at 11–12 (citing cases in which creditors were permitted standing to bring equitable subordination actions). In fact, other courts have held that debtors have no standing whatsoever to seek equitable subordination. *See Balcor/Morristown Ltd. Partnership v. Vector Whippany Associates,* 181 B.R. 781, 791 (D.N.J.1995) ("The debtor has no standing even to raise the equitable subordination doctrine.") (citing *In re*

*Weeks,* 28 B.R. 958, 960 (Bankr.W.D.Okla. 1983)).

The debtor also undermines his own argument by citing to a case which clearly states that "debtors have no standing to raise the doctrine," observing that "the proper party to seek equitable subordination is the creditor or the trustee acting as a representative of the creditor, not the debtor." *In re Weeks,* 28 B.R. at 960 (citing *In re Lockwood,* 14 B.R. 374 (Bankr.E.D.N.Y.1981)). The debtor alternatively suggests that this Court adopt the reasoning of the California bankruptcy court in *In re Morpheus Lights, Inc.,* 228 B.R. 449 (Bankr.N.D.Cal.1998). That decision stands for the proposition that section 510(c) of the Bankruptcy Code "permits subordination of claims to the claims of other specific creditors." The debtor then makes the illogical inference that debtors, therefore, have standing as parties in interest to pursue equitable subordination actions. Debtor's Mem. in Support at 14. The settled doctrine is that claims may be subordinated to claims, and equities to equities. *See, e.g., Lockwood,* 14 B.R. at 381 n. 13 (noting that claims may be subordinated to other claims, but not to other interests, including those of the debtor) (citation to legislative history omitted). By no means does this doctrine support the invalid inference that the claim of a creditor may be subordinated to the interest of the debtor.

> b. *The debtor cannot assert standing as a "party in interest" section 502(a).*

Finally the debtor asserts that he possesses standing to bring an equitable subordination action as a "party in interest" under section 502(a) of the Bankruptcy Code, which states:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a). In support of this argument, the debtor relies upon the Supreme Court's recent opinion in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). Although the debtor failed to cite to any specific portion of the opinion that supported his contention, the core of the debtor's argument is apparently set forth in the following passage:

> Similarly, had Congress intended the provision to be broadly available, it could simply have said so, as it did in describing the parties who could act under other sections of the Code. Section 502(a), for example, provides that a claim is allowed unless "a party in interest" objects, and § 503(b)(4) allows "an entity" to file a request for payment of an administrative expense. The broad phrasing of these sections, when contrasted with the use of "the trustee" in § 506(c), supports the conclusion that entities other than the trustee are not entitled to use § 506(c).

*Hartford Underwriters,* 120 S.Ct. at 1947–48. (citations omitted).

As this passage reveals, the Supreme Court clearly examined section 502(a) as nothing more than an example of one of the few Code provisions in which the trustee was not the exclusive party allowed to bring an action under the Code. Specifically, section 502(a) contemplates that creditors may object to proofs of claim as parties in interest. To suggest that Justice Scalia *intended* something he did not *say* in his opinion for the Court, namely that in failing to provide exclusivity to trustees, section 502(a) affirmatively provides that debtors are parties in interest for purposes

of objection to proofs of claim, is to suggest that *Hartford Underwriters* is an opinion in which Justice Scalia deviated from his longstanding adherence to plain language and New Textualism. Rather, in rejecting the petitioner's argument that "in the absence of such restrictive language, no party in interest is excluded" in *Hartford Underwriters*, Justice Scalia explicitly repudiates the very argument the debtor is attempting to make here:

> This theory—that the expression of one thing indicates the inclusion of others unless exclusion is made explicit—is contrary to common sense and common usage. Many provisions of the Bankruptcy Code that do not contain an express exclusion cannot sensibly be read to extend to all parties in interest.

*Id.*, 120 S.Ct. at 1948. (citing Code sections 363(b)(1), section 364(a), and 554(a) as examples). Thus, just because section 502(a) does not affirmatively exclude debtors, it does not logically follow that debtors are included as "parties in interest" who may object to proofs of claim. In fact, the converse is true.

The majority of courts have generally found that a debtor is not a party in interest under section 502(a). *See, e.g., In re Manshul Construction Corp.*, 223 B.R. 428 (Bankr.S.D.N.Y.1998) (while recognizing a split in authority, noting that the majority of courts and bankruptcy treatises have found that " '[a] debtor lacks standing to object to a claim against the estate because he has no interest in the distribution to creditors of assets of the estate.' ") (citing *In re Kressner*, 159 B.R. 428, 432 (Bankr.S.D.N.Y.1993) (citations omitted)).

The debtor further misstates the Supreme Court's argument in *Hartford Underwriters* by suggesting that "[t]he Court stated that, where standing is not restricted, it must be broadly applied". Debtor's

Mem. in Support at 12. Contrary to the debtor's assertion, the *Hartford Underwriters* case is not an affirmative mandate for courts to overturn existing precedent and cast a broad net that sweeps all putative "parties in interest" into the scope of section 502(a). By contrast, the Court merely suggested that the broad phrasing of some Code sections, including 502(a), "supports the conclusion that entities other than the trustee are not entitled to use section 506(c)." *Hartford Underwriters*, 120 S.Ct. at 1948. Thus, the Court only used section 502(a) as a corollary example to support the main discussion of section 506(c), making no indication that the traditional interpretation of the phrase "party in interest" was meant to be overturned. In his Memorandum in Support, the debtor neglected to offer any quotations from the *Hartford Underwriters* opinion that supported his assertion, and failed even to argue the matter in significant depth. In the final analysis, it is difficult to read the *Hartford Underwriters* opinion as anything other than a resounding reaffirmation of the trustee's unique and predominately exclusive position in bankruptcy.

> c. *Any equitable subordination action vests in the trustee, not the debtor.*

Next, as to the effect of dismissing this case on any pending complaint for equitable subordination, assuming *arguendo* that the debtor has stated a proper basis for that extraordinary relief, this Court does not read the decisions of the Court of Appeals as standing for the proposition that it is precluded from dismissing a chapter 7 case because there are no assets to be administered that are not either too burdensome or of too inconsequential value under a true cost-benefit analysis. To begin with, that cause of action vests in the trustee, and the trustee has moved to com-

promise that cause of action by dismissing it. The Court finds that the trustee's motion to dismiss the Debtor's First AP should be granted, and the debtor's objections overruled.

The Court converted what was clearly a bad faith chapter 11 filing for the sole or primary purpose of collaterally attacking a final judgment of the New York state courts, to a case under chapter 7 for the express and limited purpose of permitting the chapter 7 trustee to make an independent assessment of the merits of that claim or cause of action. The Court is fully satisfied that the trustee properly exercised his business/legal judgment in determining to dismiss that complaint because it was wholly lacking in merit. As the facts stood on the petition date in this case, nothing that the debtor's counsel continues to reargue has any merit.

2. *There is no cognizable equitable subordination claim under the facts of this case.*

Generally, equitable subordination involves subordination of a claim below other claims of the same type in cases where a debtor's fiduciary takes advantage of other creditors, where a debtor is controlled by an outside creditor to the disadvantage of other creditors, or when a creditor defrauds other creditors. *Balcor/Morristown,* 181 B.R. at 791. The debtor's heavy reliance on *In re 9281 Shore Road Owners Corp.,* 187 B.R. 837 (E.D.N.Y.1995), to support his argument to the contrary is misplaced, because the facts in this case are clearly distinguishable. *9281 Shore Road Owners* was a single-asset real estate case involving a multi-million dollar apartment building. In his motion to close this case, the trustee has not only asserted that there are no assets in the bankruptcy estate, but also that the cost of attempting to pursue any potential fraudulent transfer actions would be prohibitive and stands to generate no net recovery for distribution to creditors. Although acknowledging the exclusivity of equitable subordination as a bankruptcy remedy, the *9281 Shore Road Owners* court also recognized that an equitable subordination action in a no-asset case would be clearly nonsensical:

"Equitable subordination is only a remedy in a bankruptcy court if the trustee has funds to distribute. If there is going to be no bankruptcy distribution, equitable subordination is meaningless."

*Id.* at 854. (quoting *In re Danbury Square Associates,* 153 B.R. 657 (Bankr.S.D.N.Y. 1993)). Since in this case, there are no assets to distribute, the debtor's counsel's argument is devoid of any merit.

As far as the elements of equitable subordination are concerned, the party seeking subordination must show (1) inequitable conduct by the claimant; (2) injury to the creditors or conferral of an unfair advantage on the claimant; and (3) equitable subordination under the circumstances must not be inconsistent with the bankruptcy laws. *Lockwood,* 14 B.R. at 380–81 (citation omitted). At the outset, the debtor's argument has failed to establish the first of these requirements, a showing of inequitable conduct by Yihye.

The first element of "inequitable conduct" is generally recognized as being satisfied by one of the following three categories: 1) fraud, illegality and breach of fiduciary duties; 2) substitution of debt for capital when a company is undercapitalized; and 3) the claimant's use of the debtor as an alter ego instrumentality. *9281 Shore Road Owners,* 187 B.R. at 853. (citations omitted). This case clearly does not fall under the latter two categories. The debtor has also failed to make any argument that Yihye has committed fraud or a breach of fiduciary duties. It is

important to note that the case most heavily relied upon by the debtor was substantially influenced by the assertion that insiders or fiduciaries were involved. *Id.* In this case, Yihye's judgment was awarded on the basis of an arms-length breach of contract action, clearly differentiating this case from *9281 Shore Road Owners,* since non-insider creditors are generally not considered to be fiduciaries of either the debtor or their fellow creditors. *In the Matter of Teltronics Services, Inc.,* 29 B.R. 139, 169–70 (Bankr.E.D.N.Y.1983). Furthermore, although non-insiders may commit inequitable conduct that justifies equitable subordination in rare instances, "gross misconduct" or "an act of moral turpitude" must be demonstrated. *Id.* Notably, the district court in *9281 Shore Road Owners* quoted extensively from a Vermont bankruptcy court decision which emphasized: " 'There are few cases in which gross misconduct has actually been applied to non-insiders, and even fewer where inequitable misconduct has caused a claim to be subordinated.' " 187 B.R. at 853 (quoting *In re Mayo,* 112 B.R. 607, 650 (Bankr.D.Vt.1990)). In asking this Court to find the "gross misconduct" necessary to equitably subordinate Yihye's claim, in the sense of disallowing it entirely, the debtor has fallen far short of meeting the high standard necessary to bring the disfavored remedy of equitable subordination into play.

F. *Interpretation of the effect of the English discharge.*

 Finally, if there is a remedy remaining after the bad faith dismissal of this chapter 7 case (e.g., for declaratory relief as to the effect of the discharge in the English bankruptcy case) then the appropriate court would appear to be the Bankruptcy Division of the High Court in London That court has the greatest expertise in determining the consequences of any effect of its own order of discharge. Again, the principles of international comity persuade this Court to abstain from determining that question in this chapter 7 bankruptcy case. The debtor is hardly without an appropriate remedy in London, especially since he filed for relief in that court and Yihye was at the relevant time a resident in London. This, however, should not be interpreted as this Court's granting or denying any recognition to the orders of the English High Court.

Because of the dismissal of this case as a bad faith filing under section 707(a), there is no reason for this Court to further be burdened with addressing any of the debtor's counsel's outstanding motions or complaints, which are nothing more than efforts to relitigate substantially similar claims. Those motions or complaints have become moot.

The Court has issued a separate order consistent with this Memorandum.