**In re Peter GUIDO, Debtor.**

**Bankruptcy No. 897–80160–288.**

United States Bankruptcy Court, E.D. New York.

July 23, 1999.

Steinberg, Fineo & Burlant, Garden City, NY, for Debtor.

Richard L. Stern, Huntington, NY, trustee.

## AMENDED MEMORANDUM OF DECISION

STAN B. BERNSTEIN, Bankruptcy Judge.

Before the Court is the question of how much the chapter 7 trustee should be paid as a commission under 11 U.S.C. section 326(a) under the facts of this case. After this memorandum was issued in a prior version, the trustee moved for reconsideration. The Court heard argument on the motion for reconsideration, reaffirmed its prior decision, but agreed to clarify some of the points made in that decision. This Memorandum of Decision supersedes the prior decision.

### Background

In this case, the holders of allowed unsecured claims will be paid in full (including interest at 9% per annum), and a surplus will be returned to the individual debtor. The sole source for funding this distribution is the net proceeds of the debtor's post-petition settlement of a personal injury action. Absent the settlement of the personal injury action, this would have been a no-asset chapter 7 case. The state-law action was settled for $520,000 in actual and compensatory damages payable to the debtor for the permanent disability he suffered. From that $520,000, his personal injury counsel has already been paid a one-third contingent fee of $171,013.56 and reimbursable costs of $9,959.31; the worker's compensation carrier has been reimbursed $40,000 for medical and related expenses advanced on the debtor's behalf; and the debtor's chiropractor was paid $450.00 for his post-petition services. Upon this Court's approval of the stipulation of settlement, the balance of $299,-577.13 from the settlement proceeds was remitted to the trustee. Upon further application of the debtor, the Court approved an interim distribution of $200,000 in October of 1998 to the debtor.

The allowed unsecured creditors claims total $23,897.71. The trustee proposes a distribution of an additional 9% in accrued interest on these claims for a total of $28,-921.65. The trustee is seeking a commission of $16,705.95, the maximum amount calculated under the statutory formula under section 326(a) upon a base of $269,-

118.91 in settlement proceeds. This amount is the difference between the $520,000 in gross settlement dollars plus $915.92 in accrued interest less the $251,-777.01 paid or to be paid to the debtor. In addition, the trustee seeks reimbursement of $123 in costs, the allowance of modest attorney's fees of $2,805.00, and costs of $75.00 to his own law firm as trustee's counsel.

In all chapter 7 cases such as this in which the trustee seeks a commission, the Court routinely computes the ratio of the requested commission, the trustee's expenses, and the trustee's attorneys' fees and expenses to the amount of allowed unsecured claims. This is the imputed cost of collection. In this case, the cost of collection is 86%. That cost strikes this Court as excessive.

On June 22, 1999, at the hearing held on the trustee's final report and application for his commission and attorney's fees, the debtor raised an objection to the requested commission. The debtor could not offer any recommendation to the Court about what he thought a reasonable commission should be, but he expressed his concern that the commission, in effect, represents a double-charge on the very substantial dollars collected by his personal injury lawyer and the workmen's compensation carrier. Excluding as *de minimis* the $450 paid to the chiropractor, the "double-charge" would be computed upon $219,972.87. Rounding this amount to $220,000, the debtor's objection is to paying a 5% commission to the private trustee on this aggregate amount or $11,000.

The Court asked the trustee to estimate the number of hours he spent on the administration of this case, and after a recess in which he was given an opportunity to reconstruct that estimate of time, he re-

plied that he spent about 5 to 10 hours a year in this case over the past two years.[1]

### Discussion

■■■ Section 326(a) provides that the court may allow the chapter 7 trustee reasonable compensation and places a maximum limit upon awarded commissions. It incorporates a discretionary standard for allowing the trustee's commission. The operative word "may" clearly means that the bankruptcy court may authorize the maximum compensation, but the cases are legion in stating that the maximum is not the minimum, and that the bankruptcy court must take into consideration all of the relevant facts and circumstances of the particular case before it.[2] Indeed, as the courts of appeals have reiterated, if a bankruptcy judge fails to engage in the proper exercise of discretion and automatically approves the maximum amount, that would be a per se abuse of discretion. *See, In re Lan Associates, XI, L.P.*, 1998 WL 467100 (D.N.J.1998).

Quite apart from any global standard of equity or justice, there is a crucial and logically prior question of law raised by this case: What, as a matter of law, is includable within the base for computing the trustee's commission? The reported decisions construing section 326(a) have recognized a distinction between funds that are constructively received and funds that are actually received. These cases stand for the proposition that a commission can only be calculated upon the funds actually received by the trustee. 3 Collier on Bankruptcy, Para. 326.02[2][f][ii] (15th rev. ed.1998), *citing, In re New England Fish Co.*, 34 B.R. 899, 902 (Bankr. W.D.Wash.1983); *See also, In re Pink Cadillac Assoc.*, 1997 WL 164282 (S.D.N.Y. 1997). In this particular case, the trustee

---

1. Trustees in chapter 7 cases filed by individuals do not generally keep detailed daily time records of the hours they spend in administering the property of the estate. That would be an unjustified burden on them in the mine run of no-asset or nominal asset chapter 7 cases.

2. See Stan Bernstein & Lawrence P. King, Collier Compensation, Employment and Appointment of Trustees and Professional Persons in Bankruptcy Cases, ¶ 6.02 (Matthew Bender & Co, Inc., 1999) (collecting cases).

never received any settlement proceeds that were paid directly to the debtor's personal injury counsel in fees and expenses or to the worker's compensation carrier.

The trustee argued that it was only as a matter of convenience that he drafted an order for this Court to enter in which the fees to the plaintiff's counsel and to the worker's compensation carrier were to be paid directly by the settling defendant. The trustee asserted that had he known that he would not have been entitled to be paid his commission on these "direct payments," he would have never submitted the order in that form, and would have instead provided that all of the settlement proceeds be paid to the estate, and then, in turn, would make disbursements to the plaintiff's counsel and to the insurance carrier. In responding in this manner, the trustee misses the point.

■ The sharpest point is that the trustee is not entitled to be paid a commission on settlement proceeds that are subject to a constructive, charging, or equitable lien on the settlement proceeds as a matter of state law in favor of the plaintiff's counsel and the insurance carrier. In this respect, the trustee takes the settlement proceeds *cum honore*. In an analogous sense, when a trustee liquidates the assets of a construction company, the trustee is generally not permitted to include within the base for computing the commission that part of the accounts receivable collection that are payable to Article 3A lien claimants in New York or other trust fund claimants. So if the receivables under a construction contract is $100,000, and the Article 3A claimants are entitled to paid $70,000 to satisfy their claims on that particular job, then the trustee can only include $30,000, the estate's portion, in determining his commission base.

The trustee argues that this Court's construction of section 326(a) is wrong as a matter of law because the plain language of the statute says the trustee may be paid a commission "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." The trustee emphasizes that disbursements to holders of secured claims must be included within his compensation base because that is what the language of section 326(a) plainly says, and because application of the plain language makes perfectly good business sense. The trustee further asserted that it is the firm expectation of a commission that specifically includes secured claims within his section 326(a) base that gives a chapter 7 private-panel trustee the incentive to administrate that asset so as to maximize the distribution to the estate. If this Court were to impair that incentive by its present ruling, that would "send the wrong message" to trustees in this district and in others.

■ The trustee, however, recognizes that even if the disbursements to holders of secured claims are included in the compensation base, this Court retains the discretion to reduce the amount of the commission in the sound exercise of its discretion. In one respect, the trustee seems to be arguing that the mental model for construing this section is, in effect, to posit a rebuttable presumption in favor of including all disbursements to secured creditors within the compensation base, and that the burden then falls upon the Court or any objecting creditor to justify a rejection of that presumption. Quite to the contrary, the burden of proof rests with the trustee. The trustee has to persuade this Court that in a case in which the trustee incurred only modest expenditures of time in administering this estate—probably no more than 15 hours, the sound exercise of discretion justifies paying the trustee a large premium above his imputed time charges by including the distribution to secured creditors as part of his compensation base.

■ Applying these considerations to the facts, the only amount that the trustee could indefeasibly claim is included within

the commission base is the $28,921.65 in disbursements the trustee will make to the holders of allowed unsecured claims. Using the maximum formula basis under section 326(a), the trustee's commission would be $3,642, and not the $16,706 which the trustee has sought in his final application. The trustee has failed to persuade the Court that in his routine oversight of the debtor's personal injury action, he is entitled to be paid $11,000 as a percentage for amounts disbursed (or collected) from the gross settlement amount to the plaintiff's counsel and to the worker's compensation insurance carrier.

■ The Court also is prepared to draw as meaningful a distinction for purposes of calculating the section 326(a) commission between payment of secured claims when (i) the trustee has expended significant amount of case administrative time in liquidating property of the estate which is partially encumbered; and (ii) when the trustee merely monitors the debtor's prepetition claim for personal injury, which is subject to the debtor's $7,500 state law exemption, in the hope that the settlement or judgment will net some funds for distribution to the estate, especially administrative expenses and priority claims.

Under the first category, one can readily imagine a situation in which the trustee has to expend substantial time and effort in liquidating real property, subject to consensual and involuntary liens, but in which there reasonably appears to be some equity recoverable for the estate. Consider a commercial building formerly used by the debtor in a manufacturing operation—a commercial printing plant on Long Island—and that property is environmentally contaminated. The trustee has to coordinate phase one and two environmental assessments, and then negotiate a remediation plan with the state and federal regulatory authorities before the property can be sold. This effort involves seemingly endless meetings or conferences with the estate's environmental engineers, special environmental counsel, special real estate counsel, as well as the principals and counsel representing a series of potential bidders. After three years of activity on the part of the trustee, the property is finally ready to be sold. The outstanding first and second mortgages and real estate taxes total $2,5000,000; the selling price, as approved by the court, is $3,250,000. In this set of circumstances, the trustee may present a strong argument for including the disbursements to the lien creditors within the trustee's compensation base, for in that case, the trustee's efforts created or preserved material value for the estate. In other words, it is not the trustee's payments to secured credits from the liquidation of the property of the estate that is controlling, but the amount of time and expertise which the trustee had to "invest" in the liquidation of such an asset.

There is also, no doubt, an equitable consideration that comes into play when an individual's state law exemption in a personal injury award is limited to $7,500, yet it is "his injury" that results in creating a distribution to creditors of the estate, including the trustee, the trustee's counsel, and other administrative and priority creditors. When the debtor has no priority creditors for unpaid taxes and the like, and has less than $50,000 in allowed unsecured claims, the "equities" of the case surely favor maximizing the distribution to the injured debtor at what the trustee may perceive is "the trustee's expense." If this is how the trustee perceives the situation—and in this case, he protested repeatedly at the two hearings that this Court's ruling was very unfair to him, then he has, unfortunately, misperceived it.

This Court respects the principle that trustees should be paid reasonable compensation. Section 326(a) tries to capture this in a formula derived from distributions to creditors, but that formula often does not work, and because of this, the determination of reasonable compensation is expressly subject to discretionary limitations. The concern of Congress is to avoid over-compensating trustees just as well as

under-compensating them, if one were to look strictly to cash flows through the estate. And, in the end, it is significant who bears the ultimate burden of reasonably compensating the trustee. When that burden falls heavily upon a permanently injured individual, a sound and humane exercise of discretion has to favor the debtor.

The Court wishes to stress that it is not critical of the trustee's performance in this or in any other chapter 7 case; indeed, on many occasions, the Court has commended the trustee for his outstanding performance as a trustee in cases assigned to this docket. But in this case, the debtor's objection is sound and is supported by the express language of the Code and the clear thrust of the case law.

Therefore, the Court has decided to allow as final commission the sum of $3,642. That should reasonably compensate the trustee for the amount of time he has estimated he invested in this case, which is supported by the detailed description of the tasks he has performed in his final report. The Court is also reasonably satisfied with the amount requested in the trustee's final application for reimbursable costs and for attorney's fees and reimbursable costs for his own law firm. A separate order has been entered consistent with this opinion.

The Clerk is authorized and directed to serve a copy of this Memorandum Decision on the chapter 7 trustee, his counsel, the debtor, and the debtor's counsel.