**In re Enrico VONA, Debtor.**

No. 03–86782–288.

United States Bankruptcy Court,
E.D. New York.

Nov. 9, 2005.

Richard J. McCord, East Meadow, NY, for Debtor.

**EMENDED MEMORANDUM OF DE-CISION AND ORDER OVERRULING THE UNITED STATES TRUSTEE'S PRO FORMA OBJECTION TO THE REQUEST FOR THE TRUSTEE'S COMMISSION AND PROFESSIONAL FEES AND EXPENSES.**

STAN BERNSTEIN, Bankruptcy Judge.

Background and Findings:

In this case, the chapter 7 trustee, Kenneth P. Silverman, Esq., made a request in connection with his final report for a maximum commission of $7,001.79. The United States trustee filed its *pro forma* "limited Testaverde objection." The objection, if sustained, would exclude from the base of distributions for calculating the trustee's statutory commission under section 326(a) all proposed payments to the trustee as his commission and to his professionals as final compensation. As applied, the objection would reduce the commission by $721.79. Frankly, the extra pro-rata distribution that would flow to the class of general unsecured creditors from sustaining this objection would be a fraction of one percent. This contested amount can only be described as *de minimis*.

The Court has reviewed the docket entries, the case file, the pleadings, the trustee's final report and its attachments, the trustee's narrative of his services, the trustee's detailed description of administrative services, the number of hours he personally logged, the efficiency of the trustee's administration of the case, the allocation between trustee's administrative services and the trustee's professionals' services, and then considered the due proportionality between the trustee's commission and the professionals' services and the proposed absolute and percentage distribution to the unsecured creditors in this estate. In this case, the trustee and his counsel—his own firm—created this entire estate by bringing a fraudulent transfer complaint against an insider, and induced a settlement of $75,000 which was approved by the Court after notice and hearing. This reflects an aggressive, but efficient administration of this estate by the trustee. Moreover, the trustee's firm was successful in recovering this substantial amount, which, indeed, compared to other trustee's fraudulent transfer actions, was performed at a relatively low cost of $6,905.85 plus

reimbursable costs of $302.11. The trustee is to be commended for insuring that his firm kept its hours tightly in check. The trustee himself logged about 20 hours, to which this Court has imputed a local hourly rate of $350, which when extended totals $7,000, which is exactly equal to the maximum commission that he has requested of $7,001.79. This is consistent with the holding of the Third Circuit in *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109 (3d Cir.1999). Of the proceeds for distribution, assuming that the trustee's maximum commission is allowed and his firm's final compensation is allowed, then the secured creditor will receive its full claim of a rounded $25,500, and the general unsecured creditors, totaling a rounded $82,400, will receive a significant pro-rata distribution of 42.47% from the net dollars for distribution to that class of $35,000. All in all, this should be viewed as a good result in a case that began with no dollars for distribution to anybody.

### Discussion:

The United States trustee in this administrative division files a *pro forma* "limited Testaverde objection" in virtually every final report filed by a member of the chapter 7 trustee panel in an asset case—that is, cases in which there is money arising from the proceeds of liquidation of property of the estate. The United States trustee takes the formal position that, based on the opinions of two district judges in the Central Islip Courthouse—the published decision in *In re Testaverde*, 317 B.R. 51 (E.D.N.Y.2004) and the unpublished one in *In re Stein*, No. 04–CV–3196, slip op. (E.D.N.Y. March 25, 2005)—trustees are not entitled as a matter of a *per se* rule of law to include payments of allowed compensation to the trustee's professionals[1] in calculating the trustee's commission in a chapter 7 case under the statutory formula set forth in section 326(a) of the Bankruptcy Code.

The original *Testaverde* decision, which was made by this Court in *In re Testaverde*, No. 02–88997, 2004 Bankr.LEXIS 1964 (E.D.N.Y.), held that by definition a professional person is not a "party in interest" for purposes of computing the base of distributions by the trustee. In its original analysis, this Court implicitly focused solely on what it perceived was the "plain language" of section 326(a). Section 326(a) authorizes a commission to be based on distributions to "parties in interest, including secured creditors, but excluding debtors." In construing the words "party in interest" as excluding professional persons, the premise was that the very employment of these professional persons depended upon their having no adverse interest to the estate under section 327(a) of the Bankruptcy Code[2], that

---

1. The trustee's professionals is an abbreviated reference to the class of professional persons whom the trustee employs under section 327 to assist him in the orderly administration of the estate. These professionals may include in a particular case both special and general counsel, an appraiser, a real estate broker, an auctioneer, and an accountant. As a condition for employment, the bankruptcy court has to find that each professional neither holds nor represents an interest adverse to the estate. This condition must continue to remain satisfied throughout the entire period of employment. It is in this formal and technical respect that one may infer that a profes-

sional cannot be a party in interest for that would mean that the professional would have a disqualifying claim or interest against the estate. But upon a more complete or holistic reading of the Bankruptcy Code, that inference is inconsistent with other provisions of the Code, and the discussion of why that inference is inconsistent goes to the heart of this matter.

2. Section 327(a) requires that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse

is, that they not be or become persons with an adverse interest to the estate. It seemed inconsistent with the basic tenor of the Bankruptcy Code to require that professional persons, on the one hand, not hold any adverse interest to the estate—a condition which has to remain the fact throughout their employment, and then, on the other hand, to turn around and define them as parties in interest for purposes of calculating the trustee's commission. Moreover, on policy grounds, this Court held that it was inappropriate to permit the trustee to put himself in a position of conflict for the last dollars of the estate when on a dollar for dollar basis, each dollar paid to the trustee was one less dollar paid to the unsecured creditors of the estate. It was even more unseemly, as originally noted in *In re Guido*, 237 B.R. 562 (Bankr.E.D.N.Y.1999), when the trustee's request to be allowed to pay himself a commission on fees paid to personal injury counsel out of the proceeds reduced on a dollar for dollar basis the net proceeds of settlement of the debtor's prepetition personal injury claim. In cases in which there are large settlements like *Guido*, this reflects the sad fact that the debtor is permanently injured or disabled, and the debtor is dependent on the amount of settlement proceeds he is paid to meet his on-going long term expenses.

In affirming this Court's ruling in *Testaverde*, the District Court analyzed the plain meaning of the term "parties in interest" by resorting to Black's Law Dictio-

nary for a definition of this term because it was not defined in the Bankruptcy Code. 317 B.R. at 54. The only definition that Black's offers is of the main word "party," which it defines as a substantive noun, "a person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually." Then Black's Law Dictionary goes on to cite precedents in which variations of the word "party" is used. One of these, under the reference to "party in interest," is "primary meaning ascribed the term 'party in interest' in bankruptcy cases is one whose pecuniary interest is directly affected by the bankruptcy proceeding," citing only *In re Kutner*, 3 B.R. 422, 425 (Bkrtcy. N.D.Tex.1980). The further difficulty in treating this as a definition of "party in interest" in a bankruptcy case is that it begs the question. Professional persons are compensated by the estate under section 330, and the dollars paid to them from proceeds of the liquidation of property of the estate are dollars that could otherwise be paid to the priority and general unsecured creditors of the estate; that inherent conflict about who gets paid surely suggests that the professional persons are those with a pecuniary interest that is directly affected by the bankruptcy proceeding, and as such may be properly characterized as parties in interest, absent all other considerations. This is the point later made in *In re Nardelli*, 327 B.R. 488 (Bankr.M.D.Fla.2005).[3] What the *Nardel-*

---

to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties ..." The term "disinterested person" is itself defined in section 101(14)(A) as a person that "is not a creditor, an equity security holder, or an insider"; and, further along, in section 101(14)(E), expanding the standard in section 327(a), as a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason."

**3.** The District Court also noted that the term "parties in interest" had been modified from a parallel provision under the 1898 Act, as amended, in which the prior referent was to a "person." 317 B.R. at 55. It is not subject to any reasonable dispute that a "person" is a defined term under the Bankruptcy Reform Act of 1978, as amended, but this particular

*li* court seems to skip over is that professional persons are those who perform post-petition services and who may qualify for the allowance of their compensation as persons with unpaid administrative expenses, but who, nevertheless, are supposed to remain disinterested, that is, they cannot become persons or parties in interest with interests adverse to any class of creditors or equity security holders. In this respect, even though persons with allowed administrative expenses may be directly affected by the distribution of proceeds of the estate, and to that extent may loosely be referred to as "parties in interest," they are surely a paradoxical type of "party in interest" on their face, namely, parties in interest who cannot hold an interest adverse to the estate. It is difficult to escape the strictly logical conclusion that it is inconsistent, or worse, rather incoherent, to say that those with administrative expenses cannot be parties in interest under section 327(a), and at the same time, to define them as parties in interest for purposes of section 326(a).

There turns out to be several difficulties with the "plain language" analysis in both *the Testaverde* and *Stein* decisions. The plain language analysis is incomplete by virtue of its failure to define each of the distinctive terms expressed in the noun phrase in section 326(a), and as a result of that incomplete analysis, it failed to pay any attention to a key word—"including ." Both decisions of the District Court adopted a dictionary construction of the substantive noun—"parties in interest"—which is unintentionally too restrictive and inconsistent with the meaning of the entire phrase. Indeed, it was this Court's initial failure to take full measure of the preposition "including" that lead it to define the referents in this phrase as limited exclusively to "parties in interest" that this

definition makes no internal reference to a

Court had interpreted as excluding the payment of allowed final compensation to professional persons from the basis of distributions in calculating the amount of the trustee's statutory commission.

For ease of reference, here is the measuring standard in section 326(a), in relevant part:

> In a case under chapter 7 . . ., the court may allow reasonable compensation . . . of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed [a sliding scale of percentages as a function of various ranges of dollar amount] **upon all moneys disbursed** or turned over in the case **by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.** (Emphasis added)

Although the substantive noun, "parties in interest," is not defined under the Bankruptcy Code, the preposition "including" is. Section 102(3) of the Bankruptcy Code states that " 'includes' or 'including' are not limiting." Conventionally, bankruptcy lawyers restate the term "including" to reflect this non-limited definition by writing "including but not limited to . . ." So the noun phrase should be initially restated as extending to "parties in interest, excluding the debtor, but including but not limited to holders of secured claims."

■ This noun phrase has to be further unpacked to appreciate the full extension of its meaning. First, the reason for excluding distributions to debtors from the basis of distributions that can be counted in computing the applicable percentages of the trustee's compensation—it should more narrowly say, the percentage of the trustee's statutory commission—is to incorporate the public policy that chapter 7 debtors who receive a surplus of the pro-

"party in interest" in those exact words.

ceeds of the estate after all claims and administrative expenses have been satisfied should not be further surcharged by having their distributions reduced by another layer of compensation to the trustee. Second, the preposition "including" means that at the very least "parties in interest" should be interpreted as including at least "unsecured creditors." The whole point of a chapter 7 case is to effect a distribution to unsecured creditors.

But upon further reflection, it finally struck this Court that the interpretative issue raised by the vague and undefined term "parties in interest" can be easily resolved by asking the elementary question: who are the intended beneficiaries of the trustee's distribution of the proceeds of property of the estate? There is a missing cross-reference to another statutory provision, which, once supplied, provides most of the solution. And that **missing reference is clearly section 726** (emphasis added) which directs the trustee to make distributions to a universe of persons in a detailed order of priority. After paying secured creditors their allowed claims from the proceeds of their collateral, the highest sub-class of intended beneficiaries is that comprised of those who supplied goods or services to the trustee on behalf of the estate. In any chapter 7 asset case, this sub-class is comprised of (a) the trustee's professionals who supplied their professional services to the trustee, on the one hand, and (b) in a chapter 7 in which the trustee operates the debtor's business for a limited period of time under section 721 of the Bankruptcy Code, the "vendors" who supplied their goods and services to continue what used to be the debtor's business until the trustee is in a position to sell it as an operating entity. By parity of reasoning, when there is an operating chapter 11 case, the operating trustee or the debtor in possession, which is defined as a trustee for these purposes, incurs administrative expenses to be paid to all professional persons whose employment has been approved by the court and to the vendors of other goods and services used in the operating business.

Technically, the Code draws a distinction in several other provisions of the Code between those who are creditors because they hold claims, beginning with sections 501 and 502, and those persons or entities who provided goods and services to the estate during the period of case administration, but there is no one word for this large class. The closest one comes is to draw a distinction between claims and administrative expenses, and then follow the inference to creditors as persons who hold claims and to the second unnamed class of "persons who request the allowance of administrative expenses." Section 503 describes the process for the allowance of administrative expenses, and persons or entities with standing to request the allowance of these expenses may be said to be "persons-requesting-allowance-of administrative-expenses." At the level of the rules of bankruptcy procedure, a creditor files a proof of claim under Fed. R. Bankr.P. 3001, and the creditor is directed to use an Official Form for this purpose, but those with unsatisfied administrative expenses have to file "a request for the allowance of administrative expenses, for which there is no Official Form for this purpose.

Assuming this revised analysis presents a fair, comprehensive and correct construction of each word in the noun phrase, then it follows that distributions of payments of the proceeds of property of the estate to "parties in interest" (however awkward or cumbersome to define) should be read to include payments to persons or entities holding allowed administrative expenses, with a priority of payment over the class of creditors holding allowed pre-

petition unsecured claims. Further assuming this intermediate premise to be true, then it follows that distributions to persons or entities holding allowed administrative expenses should be counted as part of the distributions to parties in interest in calculating the amount of the trustee's compensation—more correctly—the trustee's commission under section 326(a). If this argument is valid, then it turns *Testaverde* on its head because the District Court opinion adopted a *per se* rule that excludes holders of administrative expenses—in that case, the trustee's professional persons—from the definition of the term "parties in interest." That, by no means, is the end of the analysis that the Court has ultimately to make in determining in its discretion a reasonable amount of the trustee's commission, but a restrictive definition of "party in interest" found in Black's Legal Dictionary will not suffice. And a good part of the reason that recourse to Black's does not work effectively is that the dictionary is not "statute-specific," and when attempting to define undefined words or phrases in a comprehensive federal legislative code, one has to consider all other relevant sections of the code which may supply the implicit missing terms of reference.

Moreover, there are other contexts in which the term "party in interest" is used in bankruptcy parlance. In general, bankruptcy lawyers and judges pose the operational question for determining standing by asking whether a person or entity is "in the money." This commonly used prepositional phrase is used to identify whether a person or entity will receive any distributions from the estate. Thus, when a chapter 7 debtor seeks to object to a proof of claim, the creditor whose claim is subject to this objection may allege that the debtor has no standing to object to the claim because even if the objection were sustained, it would still not provide any distribution of any surplus to the debtor. *See In re Manshul Construction Corp.*, 223 B.R. 428, 429–30 (Bankr.S.D.N.Y.1998)("A debtor lacks standing to object to a claim against the estate because he has no interest in the distribution to creditors of assets of the estate." (quoting *In re Kressner*, 159 B.R. 428, 432 (Bankr.S.D.N.Y.1993))). An analogous but slightly broader use of the term "in the money" is raised when a person or entity either seeks to intervene in a contested matter or files an appeal of an order of the bankruptcy court. If the determination of this proposed intervention or the appeal will have no affect on the claims or interests of this person or entity, the courts hold that this person or entity does not have the standing of a party in interest to raise these issues. *See In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 115–16 (2d Cir.2000)(a Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid.); *In re Blumenberg*, 263 B.R. 704, 719 (Bankr.E.D.N.Y.2001)(debtor lacks standing as a 'party in interest' to bring an equitable subordination claim on behalf of the estate.); *In re Gucci*, 126 F.3d 380, 388 (2d Cir.1997)("To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." (citing *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir.1997))). These other uses help us interpret "party in interest" in section 326(a) because it is section 726 which instructs who may be in the money by order of priority. If there are not enough proceeds to reach each sub-class in the priority schedule, then those who are not entitled to distribution

are commonly said to be "out of the money" and, if we need a name for these folks, we may say that they are not "parties in interest."

■ When all of this is said and done in supplying a working definition for purposes of interpreting "parties in interest," it still remains the duty of the bankruptcy court to determine in the sound exercise of its discretion how much should be paid as a reasonable commission to the trustee. In each of this Court's decisions in *Guido*, *Testaverde*, *Lisburger*, and *Stein*, it discussed the independent and relevant policy reasons for not counting the distributions to the trustee's professionals in calculating the trustee's commission, and the whole tenor of these decisions and all of those decisions that are unpublished which made use of this same basic approach was that a sound exercise of discretion requires the Court to take into consideration the totality of the facts and circumstances of each estate and justify the amount of the commission on independent and relevant policy grounds. Regrettably, in the last sentence of its memoranda of decisions in *Testaverde* and *Stein*, this Court lapsed into short-hand by concluding that the trustee's professional persons should not be considered as parties in interest. This reasoning was not only too short-handed, but it undercut the full policy analysis that the Court did in each opinion. By ending the opinion in this manner, this Court suggested that it was adopting a *per se* rule. Thus, it is not surprising that the District Court in *Testaverde* and *Stein* began with that as its premise.

■ What this Court originally had in mind was the idea that the reference to distributions to parties in interest was intended by Congress to be largely limited to distributions to *prepetition secured and unsecured creditors* of the estate in those cases in which there were sufficient proceeds of sale to make a pro-rata distribution to creditors in the statutory order of priority under section 726. And creditors were understood to be limited largely to those whose claims arose before the bankruptcy petition commencing the case was filed.[4] Clearly, professional persons who are first retained only after the petition date cannot logically be included in the class of prepetition creditors. Their entitlement to compensation to the extent allowed by the Court after notice and hearing is subsumed under the general category of administrative expenses. In hindsight, this Court is now forced to conclude that although the Code does seem to point in that direction, the proper analysis has to consider the implicit cross-reference to section 726(a), which points in the other direction in identifying those persons or entities who are entitled to receive a distribution from the trustee. Thus, for this limited purpose, one has to say that persons or entities with allowed administrative expenses are entitled to be classified as parties in interest for purposes of computing the base for the trustee's commissions.

The thrust of all this is to suggest that "parties in interest" remains something of a malapropism, and section 326(a) should be rewritten something like this:

4. The Court uses the phrase "to be largely limited" to recognize that there are other provisions in the Code that statutorily deem a discreet sub-class of "claims" which arise after the petition date to have arisen as of the day before the date the petition was filed. The most notable of relation-back type of claim is the one under section 502(g) for rejection damages under an executory contract or unexpired lease which was entered into by the debtor before the petition date, but which was rejected during the period of administration of a chapter 7 or chapter 13 case.

In counting distributions to be made by the chapter 7 trustee for purposes of determining the trustee's commission, the trustee must exclude distributions made to the debtor to pay exemptions and the surplus, but may include distributions to persons or entities who are owed administrative expenses as defined under sections 503 as well as to persons or entities who hold allowed secured, priority, and general unsecured claims.

This restatement merely brings to the surface the missing cross-reference in section 326(a), which once supplied, resolves any issue of ambiguity in the terms of reference for identifying parties in interest, and, derivatively, a more accurate guide for determining the proper application of section 326(a).

## Disposition:

■  Based upon this totality of the facts and circumstances of this case, the Court has determined that the commission requested is reasonable. To the extent that the United States has objected to any amount above the limited Testaverde ceiling, that objection is overruled, and the trustee is directed and authorized to make an immediate distribution of the proceeds of the estate as proposed, subject to any adjustment this decision requires.

In addition, the trustee's firm's application for final compensation, to which the United States trustee made no objection, is granted in the amount requested.

So Ordered.